UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ACHABE QUINONES,

        Plaintiff,

   v.

COUNTY OF CAMDEN, DETECTIVES
MATTHEW DIDOMENCIO COULTER,
FESI, AND THE CURRENTLY
UKNOWN AND UNNAMED CITY OF
CAMDEN POLICE OFFICERS,

        Defendants.

Civ. No. 20-cv-3341(NLH/AMD)

**OPINION**

---

**APPEARANCES**:

ANTHONY ARECHAVALA, ESQ.
LAW OFFICE OF ANTHONY ARECHAVALA, ESQ.
1015 CHESTNUT STREET, SUITE 400
PHILADELPHIA, PA 19107

   *On behalf of Plaintiff Achabe Quinones*

CHRISTOPHER J. O'CONNELL, ESQ.
SWEENY & SHEEHAN, P.C.
SENTRY OFFICE PLAZA, SUITE 300
216 HADDON AVENUE
WESTMONT, NJ 08108

   *On behalf of Defendants County of Camden, Detectives Matthew DiDomencio, Andrew Coulter, and Robert Fesi*

**HILLMAN**, District Judge

    Presently before the Court is Defendants' motion for summary judgment. (ECF 29). For the reasons expressed below, the motion will be denied.

1

I.  **BACKGROUND**

Plaintiff is Achabe Quinones ("Plaintiff"), an individual. Defendants are Detective Matthew DiDomenico ("DiDomenico"), Detective Andrew Coulter ("Coulter"), Detective Robert Fesi ("Fesi"), and the County of Camden (collectively, "Defendants"). (Amended Complaint, ECF 6 at ¶ 3; Answer, ECF 7 at ¶ 3).

On March 28, 2018, Plaintiff was driving in Camden in a silver Infiniti owned by his sister. (ECF 6 at ¶ 4; Statement of Facts, ECF 36 at ¶¶ 1, 18; Response to Statement of Facts, ECF 38 at ¶¶ 1, 4). While driving he picked up an old friend Michael Gray ("Gray"). (Id.). They stopped at a McDonalds and bought food. (ECF 6 at ¶ 5). Around the same time and at the same McDonalds, the police were in the process of arresting Derrick Stephens ("Stephens") for drug distribution having purchased drugs from him on several prior occasions and arranging to meet him at the McDonalds for another purchase and to arrest him. (ECF 36 at ¶¶ 16-18).

Fesi, and other officers running an undercover drug investigation, had communicated by voice and text with Stephens and, before that, with another suspected drug dealer, Jamal Parker ("Parker") over a particular cellphone (collectively the "Parker/Stephens cellphone"). (Id. at ¶¶ 12-17). The investigation, spanning several weeks, had determined that while Parker used the "Parker/Stephens" cellphone first to conduct

2

drug sales he later turned it over to Stephens to continue the sales to the Fesi-led undercover operation. (Id.). However, when Stephens was arrested, he had neither drugs nor the Parker/Stephens cellphone in his possession or in his car despite the fact the police had communicated with him right before his arrest. (ECF 29-5 at 17).

After leaving the McDonalds and proceeding a short distance, Defendants Coulter and Fesi stopped Plaintiff's car. (ECF 6 at ¶ 6). Plaintiff and his passenger, Gray, were asked to exit the vehicle. (Id.). Coulter and Fesi then searched both Plaintiff and Gray as well as the vehicle. (Id. at ¶ 7). Through this search, Coulter and Fesi discovered illegal narcotics in Gray's underwear and later, after a search warrant was obtained, $2,520 in the car's center console. (Id. at ¶ 8; ECF 36 at ¶¶ 20-21; ECF 38 at ¶¶ 20-21). Nothing was discovered on Plaintiff's person. (ECF 6 at ¶ 8).

Here, the versions of events between Plaintiff and Defendants take their first major diversion. The police report reciting the events of the investigation and arrests, prepared and dated in mid-April soon after the arrests, states that Coulter and Fesi discovered a cellphone in Plaintiff's car which the detectives called suspecting it was the Parker/Stephens cellphone. (ECF 29-5 at 19). According to the police report, a flip phone rang in the Infiniti when the police called the

3

Parker/Stephens cellphone number and when it rang it displayed the name used by the detectives during the undercover operation. (Id). To support this assertion, Defendants supply a call log showing a police call to the Parker/Stephens cell number shortly after Plaintiff's Infiniti was stopped. (ECF 29-7 at 3).

The police report further asserts that the flip phone was seized when Gray and Plaintiff were arrested. (ECF 29-5 at 19). Defendants allege that they were communicating with Gray via the Parker/Stephens by text and notably by voice to arrange a purchase of narcotics, and that Gray indicated in a voice call that he was in an "Infinity" sharing his concern with Defendant Fesi, acting undercover, about the police activity at the McDonalds. (Id. at 17-19; ECF 29-6 at 4). From this the Defendants contend that Plaintiff, in the same car with Gray, must have heard Gray's side of the conversation and had to know he was driving a drug dealer arranging for delivery of drugs. (ECF 29-1 at 11; ECF 36 at ¶ 18). Defendants point to the presence of Parker/Stephens cellphone in Plaintiff's car, and the implications that followed from that, as support for probable cause to arrest Plaintiff. (ECF 6 at ¶ 13; ECF 29-1 at 15-17; ECF 36 at ¶ 22).

Plaintiff alleges that Gray denies that he was communicating about a drug transaction while in the car with Plaintiff. (ECF 38 at ¶ 19). Plaintiff claims that the alleged

4

cellphone was not in the car, nor was it ringing during the stop and search. (Id. at ¶ 22). He further asserts that Gray told him he needed a ride to a lawyer's office to pay a friend's legal bill and that he was merely giving a friend an innocent ride unaware that Gray was dealing drugs and the other goings-on at the McDonalds regarding Stephens. (Id. at ¶ 1).

Coulter and Fesi arrested both Gray and Plaintiff. (ECF 6 at ¶ 8). Plaintiff was charged with two third degree drug offenses for possession and possession with the intent to manufacture, distribute, or dispense heroin in violation of N.J.S. 2C:35-10 A(1) and N.J.S. 2C:35-5B(3). (Id. at ¶ 14).

Plaintiff was held in jail for approximately 10 hours and released on his own recognizance. (Id. at ¶ 16). All charges against him were dismissed in May 2019. (Id. at ¶ 20). Plaintiff was working as a firefighter when he was arrested, and was suspended pending the outcome of the criminal case. (Id. at ¶ 17). Plaintiff lost his salary and benefits during this time. (Id. at ¶ 18). Plaintiff paid legal costs and fees in retaining criminal counsel. (Id. at ¶ 19).

Plaintiff filed his Amended Complaint on July 23, 2020, alleging (1) a false arrest and false imprisonment 42 U.S.C. § 1983 claim, (2) a malicious prosecution § 1983 claim, and a Monell claim. (ECF 6). Defendants filed an Answer on August 7, 2020. (ECF 7). On February 10, 2022 Defendants filed a Motion

5

for Summary Judgment (ECF 29).  Plaintiff filed a response on March 17, 2022.  (ECF 31).  Defendants filed a reply on April 4, 2022.  (ECF 34).  On April 6, 2022, Defendants filed their Statement of Facts.  (ECF 36).  On April 26, 2022, Plaintiff filed his response to the Statement of Facts.  (ECF 38).

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that given the undisputed facts the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(a).

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a disputed fact may affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence.  Id. at 255.  Instead, the non-moving party's evidence "is to be

6

believed and all justifiable inferences are to be drawn in his favor." Id.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the burden shifts and the nonmoving party must identify specific facts showing that there is a genuine issue for trial. Id. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

#### B. Probable Cause

Plaintiff asserts claims of false arrest and false imprisonment as well as malicious prosecution in violation of his Fourth Amendment rights and pursuant to 42 U.S.C. § 1983. (ECF 6 at ¶¶ 24-29). Defendants argue that they had probable

7

cause to arrest Plaintiff, and therefore his § 1983 claims must be dismissed.  (ECF 29-1 at 17-18).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

Pursuant to the Fourth Amendment to the United States Constitution, police may only make an arrest "upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue."  Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).  In other words, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

As the Supreme Court has explained, "[i]n dealing with

8

probable cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949) (alteration in original)).  For this reason, the Court has rejected "any rigid demand that specific 'tests' be satisfied" and has instead prescribed a "totality-of-the-circumstances approach" to the probable cause determination.  Id. at 230–31.

Determining whether there is probable cause is a fact-intensive inquiry, and thus typically left to the jury or factfinder.  See Sherwood, 113 F.3d at 401 ("Typically, the existence of probable cause in a section 1983 action is a question of fact.") (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995)).  As set out above, on summary judgment we must analyze whether there is a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a).  Nevertheless, summary judgment may be granted on the question of probable cause if a court concludes that "the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding."  See Sherwood, 113 F.3d at 401.

While the Court considers this a close call, the Motion for Summary Judgment will be denied.  While Defendants argue that

9

the facts support a finding of probable cause, (ECF 29-1 at 14-18), they notably fail to argue that there are no genuine issues of material fact. Instead, Defendants engage in an analysis of disputed facts.

Defendants claim that there was probable cause for the underlying arrest, as "*in the moments before the police stop of his vehicle, Quinones' passenger was on a cell phone repeatedly used to make drug deals, speaking with a narcotics detective, wherein he positively identified the location, make and model of the vehicle in which he was in.*" (ECF 29-1 at 15) (emphasis in original). They argue there was probable cause to arrest Plaintiff because they were communicating with Plaintiff's passenger on a cellphone they know to be used in drug transactions. (Id.). Defendants further allege that "the cellphone located in the plaintiff's car was repeated [sic] called by Detective Fesi during the course of Gray and Quinones' arrest and was seen ringing by DiDomenico and Coulter." (ECF 29-1 at 11).

If these facts were undisputed Defendants' motion would be meritorious. However, Plaintiff disputes these facts and the facts are indeed murkier that Defendants portray. (ECF 38 at ¶ 19). First, the record reveals that Gray, "denies that he was speaking to anyone about a drug transaction while he was with the plaintiff on the date in question." (Id.). Plaintiff also

10

denies that the cellphone was in the car he was driving or that it rang during the interaction with police that led to his arrest. (Id. at ¶ 22). This too is murky. While the police report recites that the flip phone was seized, seemingly undermining any claim of police fabrication of their version of events, Defendants' have failed to produce any property receipt, evidence log, or any other document reflecting the seizure of the phone. (ECF 29-5 at 19). Indeed, they seem to concede they have no record of chain of custody regarding the phone. (ECF 29-1 at 16; ECF 34 3-4).

Moreover, as Plaintiff points out the call logs supporting the motion for summary judgment raise more questions than they answer. (See 31-1 at 25-26). The log shows the phone was used for text messaging four days after Plaintiff was arrested and the phone allegedly seized. (ECF 29-7 at 3). Defendants offer no explanation of this seemingly incongruous fact. In the absence of any seizure and evidence records corroborating the police report, this objective and unexplained activity reflects a disputed issue of material issue as to whether the phone was actually seized. A reasonable factfinder might also question if the detective called the Parker/Stephens cell number to merely confirm its presence in Plaintiff's car why they had to call it four separate times when seemingly only once would suffice. But the call log reflects four unanswered calls to the same number

11

suggesting the phone was ringing unanswered somewhere else. (Id.).

In sum, as Plaintiff correctly observes, the record evidence could support a finding that Parker/Stephens cellphone number continued to be in use after Plaintiff and his passenger's arrest. These questions regarding the Parker/Stephens cell phone are sufficient to create a material issue of fact.

We reiterate that probable cause is a fact-specific analysis, and we may only grant summary judgment on this point where we find that the evidence could not support a finding that Defendants lacked probable cause. The circumstances here are not so clear. The material facts that Defendants rely on in support of their motion for summary judgment, arguing that there is probable cause, are disputed. Therefore, Defendants' motion for summary judgment on the § 1983 claims based probable cause will be denied.

### C. Damages

Defendant argues that "plaintiff has failed to establish or support any claimed damages and his Complaint must be dismissed accordingly." (ECF 29-1 at 20). Defendants cite to a Pennsylvania Superior Court decision on appeal from a judgment for the proposition that "damages must be proven with reasonable certainty." (ECF 29-1 at 18). Plaintiff responds that he will

12

be able to prove his damages at trial. (ECF 31-2 at 15). In his Complaint, Plaintiff has sought punitive damages, compensatory damages, and attorney's fees and costs. (ECF 6).

Damages resulting from a § 1983 may include compensatory damages, including "out-of-pocket loss and other monetary harms," as well as "impairment of reputation . . . , personal humiliation, and mental anguish and suffering." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)). In addition, punitive damages may also be available in a § 1983 action. Smith v. Wade, 461 U.S. 30, 35 (1983).

To support a summary judgment motion on the basis of damages, Defendants must demonstrate that "no genuine issue of material fact exists as to whether Plaintiff can prove damages at trial" and that accordingly Plaintiff cannot support his damages allegations at trial. Baier v. Princeton Off. Park, No. 08-5296, 2011 WL 5082213, at *6 (D.N.J. Oct. 25, 2011).

Defendants argue that "[a]t no time during the course of discovery in this litigation, or thereafter, has plaintiff provided any certified documentation of economic loss, subpoenaed any records, supplied any expert report in support of economic or compensatory damages, named or deposed any Camden County administrator, payroll or Fire Department representatives in support of his damage claim." (ECF 29-1 at 19). Although

13

"the absence of a sufficient expert or documentary record may ultimately prove fatal to [Plaintiff's] ability to prove damages at trial," where, as here, there is a genuine issue of material fact as to damages, summary judgment cannot be granted. Ocean City Express Co. v. Atlas Van Lines, Inc., 194 F. Supp. 3d 314, 329 (D.N.J. 2016).

There are disputed issues of material fact as to Plaintiff's damages. Defendants allege that Plaintiff's damages are "unknown" because he has not produced any certified documentation or records supporting his damages claims. (ECF 29-1 at 20-22). However, Defendants themselves point to interrogatory answers where Plaintiff describes economic loss damages related to his pay and emotional distress damages. (Id). Moreover, Plaintiff in his response points to documents in the record that he alleges support his damages claims including medical records for mental health treatment (ECF 31-12) and personnel file records from his employer (ECF 31-13). (ECF 31-2 at 13). He also points to his deposition testimony in support of his damages assertions including testimony as to his criminal legal fees, loss of pay, and his alleged emotional distress. (Id. at 13-14). And if Plaintiff's civil rights were violated, even nominal damages may be awarded in the absence of actual damages in order to vindicate Plaintiff's rights. See Carey v. Piphus, 435 U.S. 247, 248 (1978); Islam v. City of

14

Bridgeton, No. 08-1844, 2010 WL 3118522, at *2 (D.N.J. Aug. 4, 2010) ("Plaintiff's deposition about her injuries and the potential for nominal damages in a § 1983 claim are a sufficient basis for a dispute of material fact over the issue of damages.").

Whether Plaintiff will be able to demonstrate his alleged damages is a factual issue premised on disputed facts. Therefore, Defendants' motion for summary judgment based on lack of damages will be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment will be denied.

An appropriate Order follows.

Date: February 10, 2023          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.